UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES P. SCHULLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15 CV 298 CDP |
| | ) | |
| ALLIANCEONE RECEIVABLES, | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Charles P. Schuller claims that efforts made by defendant AllianceOne Receivables Management, Inc. to collect debt allegedly owed by Schuller violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. He asserts that AllianceOne used unfair, deceptive, and misleading means in violation of 15 U.S.C. § 1692d-f and that its efforts overshadowed his dispute, validation, and verification rights in violation of 15 U.S.C. § 1692g. AllianceOne has filed a motion for summary judgment arguing that its communications with Schuller did not violate the FDCPA, and it has attached audio recordings of each disputed phone call between the parties. Schuller has opposed AllianceOne's motion and has filed a cross-motion for summary judgment on liability only on his § 1692g claim. The facts are largely undisputed. After careful consideration, and for the reasons discussed below, I will grant summary judgment to Alliance on the

claim under § 1692d-f but will grant summary judgment to Schuller on his § 1692g overshadowing claim. Remaining for trial is the issue of damages to which Schuller may be entitled on the § 1692g claim.

## I. STANDARDS GOVERNING SUMMARY JUDGMENT

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007); *see* Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id*. "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). If the movant does so, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that

there is a genuine issue for trial." *Id.* (internal quotation marks and citation omitted).

## II. BACKGROUND

AllianceOne is a debt collector. In November 2014, certain credit card debt allegedly owed by Schuller was referred to AllianceOne for collection. On November 13, 2014, AllianceOne sent a letter to Schuller advising him that his credit card account had been referred to AllianceOne and he had thirty (30) days to dispute the debt's validity. In accordance with 15 U.S.C. § 1692g, the letter informed Schuller that if he notified AllianceOne in writing within thirty days that he disputed the debt, AllianceOne would obtain verification of the debt. Schuller and AllianceOne spoke on the phone three separate times. The conversations that took place during the second two phone calls are the subject of Schuller's claims.

The first of the two calls was initiated by an AllianceOne representative, Michael McDonald, on November 17, 2014. In the call, McDonald told Schuller that his dispute validation and verification rights letter had been sent on November 12, 2014. McDonald stated that the call was to collect debt and the objective was to "see if we can work something out" with the account. He told Schuller he was trying to "work out options" for getting Schuller's account resolved and more than once asked Schuller what he was "looking to try to work on the account." The remainder of the conversation went as follows:

McDonald: Figurewise, sir, what are you looking to try and work on the account.

Schuller: Well right now I think I can afford to give you guys ten dollars a month. I think the last time I gave you something it was something close to that.

McDonald: Ok. Well then if you have your checkbook with you I can set that up with you right now.

Schuller: Oh I could write a check and it'll bounce. There's no money in there sir, I told you I have no money.

McDonald: So when would the funds be available for that.

Schuller: When?

McDonald: Yes sir.

Schuller: I told you on the first.

McDonald: Ok, well if nothing's going to take place within this month I have to mark the file accordingly. Um I can give you my direct number –

Schuller: You do what you gotta do, I told you I'll have money and I can pay you ten dollars on the first. What else do you want to know?

McDonald: Well you have a great day then Mr. Schuller, ok?

The second of the two calls at issue was initiated by Schuller on November 20, 2014. He spoke with AllianceOne representative Latrice Robinson, telling her that he had received a letter from AllianceOne and was following up. Robinson attempted to defer Schuller until McDonald could call him back, but Schuller declined and asked to speak to someone immediately who could answer the question: "when do I have to take care of this debt?" He repeated this question

several more times. During the phone call he also spoke to someone off the phone about the call. Robinson introduced herself and AllianceOne and informed Schuller that "this is an attempt to collect the debt." She told Schuller that his account came in on November 12 and when any account comes into AllianceOne, they look to resolve the balance immediately. In response to Schuller again asking when he needed to take care of his debt, Robinson stated that AllianceOne was looking for payment on the account "as soon as possible" and told him the total amount due was $9454.08. Schuller asked if she meant payment in full, and Robinson responded, "Correct." He asked if they wanted it paid immediately, and she responded, "Correct." Schuller informed Robinson that he could not pay the debt and had hired an attorney, and he provided his attorney's information.

## III. DISCUSSION

To prevail on a claim pursuant to the FDCPA, plaintiff must allege and prove that "(1) the plaintiff is a 'consumer' within the meaning of the statute; (2) the defendant collecting the debt is a 'debt collector' within the meaning of the statute; [and] (3) the defendant has violated by act or omission a provision of the FDCPA. *Glackin v. LTD Fin. Servs., L.P.*, No. 4:13-CV-00717 CEJ, 2013 WL 3984520, at *1 (E.D. Mo. Aug. 1, 2013). AllianceOne does not dispute the first two elements but argues that the third element cannot be proved because the evidence fails to establish that AllianceOne violated any provision of the FDCPA.

**Schuller's Claims under Sections 1692d-f**

With regard to Schuller's claims under § 1692d-f, AllianceOne argues that there is no evidence to support his assertions that the calls were unfair, deceptive, or misleading. In response, Schuller asserts that AllianceOne's representative lied about the date its letter was sent and harassed Schuller about payment throughout the two conversations. He argues AllianceOne's "aggressive demands for payment to an unsophisticated consumer, during his dispute period and without reminding him of his dispute rights, were unfair."

15 U.S.C. § 1692d prohibits any conduct "the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt." Section 1692e prohibits use of any false, deceptive, or misleading representation or means in connection with the collection of a debt. Section 1692f prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt.

After careful review of the recorded calls, I conclude there is no disputed issue of material fact that the representatives' behavior did not rise to the level of harassing, oppressive, or abusive under §1692d. Although McDonald was initially quite persistent, once Schuller indicated he could not pay anything, McDonald said he would mark the file and give Schuller his phone number. In the second telephone call, Robinson made efforts to get off the call, and it was Schuller who

pressed her to answer his questions.  As examples of behavior that would violate 1692d, the statute includes the use or threat of use of violence, the use of profane language, and engaging a person in repeated telephone conversations with the intent to annoy, abuse, or harass.  Although defendant's representatives' behavior may have been persistent, no reasonable juror could find that it violated 1692d.

Schuller asserts that AllianceOne's "aggressive" efforts to collect payment during the dispute period without reminding Schuller, during each phone call, of his dispute rights was unfair in violation of 1692f.   However, the record demonstrates that the representatives were relatively polite, and Schuller has pointed to no case law supporting an argument that, standing by itself, a failure to remind a debtor of his dispute rights under these circumstances is a violation of 1692f.  In fact, so long as a written notice has already been sent, even §1692g does not require a debt collector to remind a debtor of his dispute rights during as subsequent call.  *Glackin*, 2013 WL 3984520, at *2.  In light of all of this, I conclude Schuller has failed to point to sufficient evidence to support a claim under § 1692f, and AllianceOne is entitled to judgment as a matter of law.[1]

---

[1] Although not determinative here, it is notable that other courts have held that where facts alleged in support of a claim under § 1692f also support a claim under a separate provision of the FDCPA, the § 1692f claim should be dismissed.  *See, e.g., Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 953 (D. Minn. 2008) ("Congress enacted Section 1692f to catch conduct not otherwise covered by the FDCPA"); *Lake v. Consumer Adjustment Co., Inc.*, No. 4:15-CV-01495-JCH, 2015 WL 8770719, at *4 (E.D. Mo. Dec. 14, 2015) (dismissing § 1692f claim where separate FDCPA provision addressed the same alleged misconduct).  Here, Schuller essentially alleges that the same facts support four separate claims under 1692d-g.

Finally, Schuller claims McDonald lied, in violation of § 1692e, by telling Schuller his dispute letter had been sent on November 12, 2014. The letter was dated November 13, 2014, and an affidavit submitted by AllianceOne's SVP of Operations states that it was sent on or about November 13, 2014.

For a representation to be actionable under § 1692e, it must be both false and material. *Lake*, 2015 WL 8770719, at *3 (citing *Donohoe v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010)). "The materiality requirement is not concerned with mere technical falsehoods...but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Id.* (quoting *Campbell v. Credit Prot. Ass'n LP*, No. 4:12CV00289AGF, 2013 WL 1282348, at *8 (E.D. Mo. Mar. 27, 2013)). With regard to his § 1692e claim, Schuller argues, in a single sentence, that AllianceOne's false statement regarding the date of the dispute letter was for the purpose of improving AllianceOne's chances of obtaining payment. Schuller has alleged no evidence to show how or why AllianceOne's misstatement would have this effect. Nor has he alleged how such a misstatement might "frustrate a consumer's ability to intelligently choose his or her response." In the absence of additional evidence, AllianceOne's misstatement regarding the date of the dispute letter appears to be nothing more than an immaterial, technical falsehood that is not

actionable. Therefore, I will grant AllianceOne's motion for summary judgment as to Schuller's 1692e claim.

**Schuller's Section 1692g Claim**

15 U.S.C. § 1692g(a) requires a debt collector, within five days after its initial communication with a consumer, to send the consumer a written notice regarding the debt that, among other things, notifies the consumer of his right to dispute the validity of the debt, obtain verification of the debt, and request the name of the original creditor within 30 days of receiving the letter. Section 1692g(b) provides that in those 30 days, unless the debtor disputes the debt or requests the name of the original creditor, collection efforts may continue but "may not overshadow or be inconsistent with" the consumer's rights in § 1692g(a).

For purposes of Schuller's § 1692g claim, the parties do not dispute the substance of the telephone conversations at issue but disagree about whether the conversations constituted a demand for payment by AllianceOne that overshadowed Schuller's § 1692g(a) rights. AllianceOne claims that informing Schuller the company wanted its debts paid immediately or as soon as possible and attempting to collect payment and set up a payment plan did not confuse or overshadow Schuller's rights. Schuller claims that AllianceOne did overshadow his rights by demanding immediate payment, implying that a partial payment must

be made within the dispute period, and threatening to "mark [Schuller's] file accordingly" if he did not pay some of the debt before November 30.

The 30-day validation period provided in § 1692g is not a grace period; in the absence of a dispute notice from the debtor, the debt collector is allowed to demand immediate payment and continue collection activity. *Founie v. Midland Credit Mgmt., Inc.*, No. 4:14CV816 RWS, 2014 WL 6607197, at *3 (E.D. Mo. Nov. 19, 2014). "Whether collection activities or communications within the 30-day validation period overshadow or are inconsistent with a validation notice is determined under the 'unsophisticated consumer' standard." *Glackin*, 2013 WL 3984520, at *3. "[A] debt collector violates the FDCPA if [the] communication would mislead or confuse" an unsophisticated debtor." *Id*. The unsophisticated debtor is "an individual with below average intelligence but not 'tied to the very last rung on the sophistication ladder.'" *Id*. (quoting *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000)). The standard also has an "objective element of reasonableness," to "protect debt collectors from liability for peculiar interpretations of collections letters." *Duffy*, 215 F.3d at 874.[2]

---

[2] The Eighth Circuit does not appear to have addressed whether the application of the unsophisticated consumer standard to an overshadowing claim presents a question of law or fact. However, the facts here are undisputed and both parties treat this as a question of law for the court. District courts within this circuit have generally held that the issue of overshadowing can be determined as a matter of law where the facts are undisputed. *See, e.g., Bland v. LVNV Funding, LLC*, No. 4:15 CV 425 RWS, 2015 WL 5227414, at *4, n.4 (E.D. Mo. Sept. 8, 2015); *Perry v. Trident Asset Mgmt., L.L.C.*, No. 4:14-CV-1004-SPM, 2015 WL 417588, at *6 (E.D. Mo. Feb. 2, 2015); *Founie*, 2014 WL 6607197, at *3; *O'Connor v. Credit Protection Ass'n, LP*,

A communication following a dispute letter may be overshadowing if it (1) indicates that the time for disputing the debt has passed, (2) misrepresents or clouds the amount of time remaining to dispute the debt, or (3) contains overt misinformation, apparent contradiction, or a noticeable lack of clarity concerning the validation period or the debtor's rights under § 1692g. *See Johnson v. Evans & Dixon, LLC*, Case No. 4:13-CV-671 NAB, slip op. at13 (E.D. Mo. filed April 8, 2014) (citing *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 416 (7th Cir. 2005).

Recent cases from this district help elucidate when a telephone communication overshadows the validation notice. In *McHugh v. Valarity, LLC*, No. 4:14-CV-858 JAR, 2014 WL 6772469 (E.D. Mo. Dec. 1, 2014), the plaintiff called the debt collector after receiving previous dispute letters regarding her debt. During the course of the parties' call, the debt collector made the following statements:

> Well, once it gets in collections, the balance is really due that day. So as soon as you can pay [the money] would really be the best.
>
> The best thing for you to do is [pay] the full amount. If you are able to break it down into two payments or so… we can give you that option.
>
> Well, if I were you … I think these we have here have been here quite a bit of time. Some of these have been here long enough. So I would

---

No. 4:11CV2187SNLJ, 2013 WL 5340927, at *7 (E.D.Mo. Sept. 23, 2013); *Owens v. Hellmuth & Johnson, PLL C*, 550 F.Supp.2d 1060, 1065 (D.Minn.2008) (noting split in authority in other circuits and considering overshadowing as a question of law).

try paying it off today. If you're able to, that's what I would do so it won't go to [inaudible] continued action.

The *McHugh* court held that it was unlikely that a hypothetical unsophisticated consumer would understand that he could still dispute the debt once he had made payments arrangements. Therefore, the debt collector's statements, made within the dispute period, improperly overshadowed plaintiff's dispute and verification rights.

Similarly, in *Glackin*, on a phone call with defendant debt collector, plaintiff asked how long she had to take care of the debt. Defendant responded that usually, when a letter is sent out, they want to make some kind of arrangement or receive some kind of payment within the same month, so in plaintiff's case defendant would want a payment, partial or otherwise, in its office by March 29. The court held that defendant's instruction to make a payment or arrange a payment plan on or before March 29, was confusing because was within the dispute period. The court noted it was unlikely that an unsophisticated consumer would understand she could still dispute the debt despite making such payment arrangements. *Glackin*, 2013 WL 3984520, at *2-*3.

Finally, in *Perry v. Trident Asset Management, L.L.C.*, No. 4:14-CV-1004, 2015 WL 417588 (E.D. Mo. Feb. 2, 2015), plaintiff called the debt collector defendant to ask about a debt on her credit report. Defendant told plaintiff the amount of the debt, and plaintiff asked if there was a deadline by which she had to

pay the amount. The debt collector responded "No ma'am, you can just begin making monthly payments to it. You can do that at our website or by send[ing] us a money order." The plaintiff argued that the debt collector's statements regarding making monthly payments constituted a request for immediate payment in violation of plaintiff's § 1692g rights. The Perry court denied plaintiff's and granted defendant's motion for summary judgment on this point, holding that nothing in defendant's statements indicated plaintiff was required or expected to take action within any particular timeframe. In fact, defendant explicitly told plaintiff there was no deadline.

Here, in the first call, defendant's representative McDonald persistently asked Schuller what he was "trying to work" on the account and then attempted to set up an immediate payment and payment plan over the phone. When Schuller said he could not make a payment until the first of the following month, which was well within the dispute and validation period, McDonald told Schuller that if nothing was going to take place in the current month, he would have to mark the file accordingly. Although the language used by McDonald does not overtly request a payment by a date certain within the dispute period, unlike the representative's language in *Perry*, it certainly indicates that a payment *should* be made within that time and failure to do so would be to risk some undefined negative consequence. Even if this conversation alone were not enough, in

- 13 -

combination with representative Robinson's statements that payment should be made in full as soon as possible and confirming that defendant wanted payment "immediately," it would certainly work to confuse an unsophisticated consumer about whether he could still dispute the alleged debt. As the *McHugh* and *Glackin* courts held, it is unlikely that an unsophisticated consumer would understand that he could still dispute the debt despite making immediate payment arrangements as Schuller was encouraged to do. It seems that the only reason Schuller did not set up a payment plan during the first phone call was that he had no money to offer.

AllianceOne argues that in order to constitute overshadowing, a clear demand for payment within the dispute period must be made, but as discussed above, courts in this district have found that something less than this is still sufficient to obscure a debtor's rights. Here, there was a suggestion that it would be best to make a payment by a date within the dispute period. This was accompanied by a directed effort to collect such a payment and an implication that there would be a negative consequence if payment were not made by that date. Schuller was then specifically told AllianceOne wanted the money immediately. It seems clear that AllianceOne's representatives were attempting to toe the line between permissible and impermissible collection efforts. But "the FDCPA is a broad remedial statute" whose terms "are to be applied in a liberal manner," and with this in mind, I conclude that defendant's representatives went too far. *Weast*

*v. Rockport Fin., LLC*, No. 4:15CV00336 AGF, 2015 WL 4427281, at *2 (E.D. Mo. July 17, 2015). The content of the telephone conversations was enough to overshadow Schuller's dispute and verification rights under § 1692g.[3]

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#13] is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment on liability [#18] is **GRANTED**.

The trial of this matter remains set on the two-week docket beginning April 11, 2016 and will consider only the amount of damage to which plaintiff is entitled, as that issue was not addressed by the motions.

                                                         CATHERINE D. PERRY
                                                         UNITED STATES DISTRICT JUDGE

Dated this 4th day of February, 2016.

---

[3] AllianceOne also argues that in the second phone call Schuller was attempting to bait plaintiff into violating the FDCPA and that it is clear he was not confused about his rights at that time. But the unsophisticated consumer is an objective standard, and the fact that the FDCPA may have been used as a sword instead of a shield in this instance does not change that analysis. *See McHugh*, 2014 WL 6772469, at *3.